Good morning, Your Honors. May it please the Court. Good morning, Counsel. Please introduce yourself for the record. I'm sorry, Your Honor. Tim Timmish, representing the plaintiff Kathleen Edwards. Mr. Timmish, okay. The issue in this case is pretty basic and seemingly simple. At its core, when do we grant a party full summary judgment? You know, maybe we ought to back up because, frankly, I'm not sure what this case is all about. You're suing Princess Cruise Lines on the behalf of your client, Edwards, correct? That's correct. What does Edwards want? At the end of the day, how does she want the judgment to read? What is the relief that she is seeking? As far as I can tell, she hasn't signed up for a cruise yet. So at the end of the day, assume you win, what do you want the judge to tell Princess Cruise Line? Your Honor, I would ask for a statement on injunctive belief that says just this. We ask that Princess modify his policies, practices, and procedures to permit the disabled to go ashore based on a reasoned rule that takes them to consider the direct threats. See, this sounds to me like a judgment that simply says follow the law. And the courts don't do that. They don't tell people follow the law. That's correct, Your Honor. We do not have a developed record yet. Isn't that a serious problem in your case? I mean, you're asking us to create this advisory sort of a statement, follow the law. And I just don't know how we can do that. Versus an all-or-nothing approach that Princess has advocated here, that the captain's word is final, no matter what the conditions and based on stereotypes about the disabled. To draw a bad analogy, we're at sea here because we have no idea what we're talking about. Let me explain the case, Your Honor. I understand the case. Specifically, with respect to the tour that the cruise she actually took, apparently she felt that she should have been carried down the stairs with the assistance of the crew. Apparently, some crew to take the wheelchair, the other crew to be ready to assist with the husband carrying the wife. That's correct. But the captain, for reasons of safety, whether it's the current or whatever it is, said no. Now, in the future, are we talking about compelling Princess to build a dock so they won't have the problem anymore at Sitka? Or are we telling the captain that somehow or other the ADA trumps his duty to ensure safety? To answer the first question, build a dock, no. The second question, no. The captain will remain the captain of the ship, and his decisions will have to be respected at sea. Then what's the point of this lawsuit? I thought you also were concerned about accommodations on the ship. I'm sorry, Your Honor. Accommodations on the boat. Accommodations on the boat. And if I may please explain that. There's more than one way to get a person off the ship. With the necessity of accommodations, I assume the seat accommodations. Yes. Apparently, there were some appropriate rooms on the ship, but they were not available or previously reserved or something like that. With respect to the future, I gather that's not your main concern. Your main concern is getting her off the ship in Sitka. Is that correct? I would weight them equally, Your Honor, if I may. Getting off the ship is part of the experience. Even if you don't have any accommodations available, make one. Correct. Okay. Correct. Currently, they have too few rooms. And if you don't have rooms that you can get into through the door with grab bars, that's automatic exclusion. But if she calls up early enough, she's going to get one. Is that right? Not correct. Excuse me. No, Your Honor. Why not? I mean, if they have accommodations, you admit that they do. And if they still have some available and she calls up, she gets one. So why isn't this all just speculation? We don't know whether she's going to be denied accommodations or not on something that she hasn't even signed up for. Your Honor, what we do know is how many rooms that they have and that they're too few and that they're fighting to cover. Why didn't you sue off the past cruise if you had trouble on the past cruise, instead of trying to sue on one that hasn't even been signed up for yet? Your Honor, it's a distinct entry. It was a later event where she tried to sign up for a further cruise. Specter came down and clarified that this cruise boat is liable to remove barriers under the programmatic rule. I think she's entitled to make a later decision, to go after a later claim. And hear me on this. There's speculation and there's going to effort. This client sent an expert on the cruise, had him investigate the boats and confirm that these barriers are pervasive. We cited the example of sending. She sent two experts. I thought all but a total of 19 ships, 17 were perfectly okay, but two were not. Am I misreading the record? I do not have those facts, Your Honor. I don't believe that's correct at all. We've looked at six different boats that have been rotated through this route. One condition based on the rotation has temporarily been improved, and that's providing a lift from the ship down to the tender. It's a separate dock. We must not confuse that dock with the one ashore, which has no problems. It can be navigated. That's the city's responsibility. That's not at issue. But getting back to the point, there's high competition for this room. As proven by my experts who tried to go on it, I sent one able-bodied and one disabled expert. They had reserved a room, called early enough, and they get there. That room's not available for one reason or another. It's been given to a person who's visually impaired. They only have four rooms on the entire boat of 1,000 rooms. They're not meeting even half of it. Is there an ADA standard out there by some agency that's promulgated, what, 7 percent of all cruise ships must have properly fitted rooms? I mean, is there anything like that out there? Admittedly, there's not, but let me get into that a little bit, if I may. Currently, we have ADAG standards, which govern new constructions and alterations. I'm sorry. You used an acronym? ADAG? What's that? I'm sorry. The Americans with Disability Act Access Guidelines. Access Guidelines. Okay. That does not, as far as new construction and alterations, those classes are not applicable to cruise ships. We're awaiting rules that, after 20 years, have not been passed to the source of some criticism by the circuit courts, as if it's not going to happen. However, we do have a standard that the Supreme Court made clear. I believe I have my count right that a five-vote majority of the Supreme Court inspector agreed that it's at least a case-by-case analysis of whether it can be accomplished without much difficulty or expense. That is not a vague standard. This Court has previously held, in Boddison v. McFally-Rilety, that that's a clear standard capable of being understood. It's not constitutionally un-vague. I'm just having a hard time finding a ripe case or controversy here, because nothing has happened yet. And ordinarily something has to happen before there's a ripe case or controversy. I mean, if your client goes and tries to sign up for a cruise and is told, sorry, we don't have an accommodation, then you might have a live case or controversy. Or if your client goes on the cruise and tries to get off the ship and the captain says, I'm sorry, you might have a live case or controversy. You might have a live case or controversy off of the last cruise. But just to come in and say, we want an order to tell these people to follow the law, whatever that is, that's not a case or controversy yet. I think there's two different issues, Your Honor. Yes, you're correct that we would not have a live case or controversy. I would add one more type of way to gain a case or controversy. That's not to send that disabled person and subject them to the harm once again. That's to send the expert, as she did, to adjudicate the ship before she signs up. That's to check the policy and find out that the Princess is still employing an all-or-nothing approach, that the captain's decision is absolutely final. In this case, my ---- Well, I was just going to let you finish. But let's assume for the sake of discussion that you have standing and there is a live case, what exactly did the trial judge in this case do at summary judgment? As I read the record, his order granting summary judgment was based on the provisions of the ticket of the last cruise. Yes, that's where I ---- Now, if you're asking for injunctive relief on a future cruise, what relevance does that have? Well, I don't think that this Court needs to reach these other questions. Specifically, standing has not yet been noticed as an issue in this case. Well, we can always raise standing. Standing goes to our ---- it goes to, you know, to jurisdiction. So standing, we can raise it any time when we think it's appropriate. True. But I do not have a record with me now, do I? We can still raise it. It can still be raised. I mean, standing, look at standing on the basis of the allegations in the complaint, as Judge Trott was just alluding to. And so the question is, you take all those facts as true at this early stage of the pleadings, do you allege sufficient facts to show that you have standing? Here's why. My client's standing is about as good as it gets, and that's as much as you could ever ask. The courts have always looked at standing and trips in terms of the type of public aggomination. We apply a different standard to hotels and tourist attractions because the visits are rare. The visits are even more rare when you're on a cruise boat. My client went overboard establishing her standing. Well, just take Judge O'Scanlan and ask you to assume that you had standing, okay? We can raise standing. Forget that. But just assume you have standing. Where did the district court judge ---- magistrate judge go wrong? The magistrate didn't reach any of these issues. Instead, it stuck to the contractual limitations. It found that my client was barred from a claim that she didn't even plead. Okay. So where ---- is there any statute of limitations that applies to your claim? Certainly. What is it? And how would it work? A two-year statute of limitations, a personal injury statute, 339.1 of the Code of Civil Procedure. By the express wording of the complaint, she seeks damages for the two-year period preceding the filing of her complaint. That's under state law, though, not under the ADA. Any claim for monetary damages has to be under California law, correct? Correct. All right. You got kicked out because of the ---- on the ADA claim, right? Correct. And once the judge said no Federal claim, I'm not going to assert jurisdiction over the supplemental state law claims. Isn't that right? Correct. Never address the merits of the supplemental claims. Correct. So let's assume you've only got an ADA claim. What's the statute of limitations for the ADA claim? The courts have held that the statute of limitations for injunctive relief does not apply in this case in the United States. And that's because in this case, why? Because they're poor measures of a continuing problem. They do not apply. Now, this Court has held as to standing in Pickern, you have to have an injury within the statute of limitations. But they're really not, in Pickern, they're really not discussing the statute of limitations as a defense. They're discussing the issue of standing. I see I have a minute and a half. May I reserve? You certainly may, counsel. We'll hear from the cruise line. Good morning, Your Honors. Gerald Gorman appearing for Princess Cruise Lines. I'd like to correct a misimpression. The plaintiff did obtain an ADA-accessible cabin on that ship on that cruise. That's the prior cruise. The plaintiff wanted an ADA-accessible balcony cabin, which was full. She's not suing about what happened on the last cruise. I understand. She's suing on the basis that Princess is allegedly guilty of continuing violations of the ADA based upon three things. One, the captain's discretion on a previous cruise that did not permit her to go ashore. Well, she's alleging that it's as a result of having experienced that, that discretion still exists today in the future. Right. And the bottom line answer to that issue is simply this, is that the circumstances that existed on that ship in that port under those weather conditions, under those tidal conditions, she would have to demonstrate that those exact conditions would exist in the future. She's not complaining about what you want to make this case all about what happened in the past. That's not what I understand this case to be. No, sir, I'm not. And that's how you move this. And you got the district court, the magistrate judge, all off on this other tangent about the prior cruise. That's not what this case is about. She's not doing any damages for that. She's saying that she's going to be discriminated against and not permitted to go ashore in the future. She's saying that the captain is going to exercise his discretion or her discretion to preclude her from going ashore. And what she's asking for is veto power over the captain's discretionary decisions in any future cruise. Now, the problem I see with that is in order to show a continuing violation under Pickern, Dalil, Duran versus 7-Eleven, all that line of cases, we have to show, or the plaintiff has to show, that, one, that there's an illegal ADA violation, two, that it's going to continue, and, three, that the defendant has shown an intent that it's not going to correct its trouble. The trouble is, that's not the way you argued. You said her claim is barred by the contractual statute of limitations of 6 months. Out of here. End of story. Right. And that's because your points that you just alleged go more to standing. Well, no. I'm responding to the Court's questions, and I'm responding to the Court's counsel. And further, you know, this didn't get kicked out on 12b-6, failure to state a claim. No. But they haven't even gotten to the merits of this. We haven't. I think part of the problem, counsel, is that this is an ADA injunctive case, but for whatever reason it didn't seem to get tried that way, or at least decided that way in the district court. And I share some of the concern of my colleague to the extent that this case was tried on the limitations attached to the ticket in the prior voyage. Now, I have a hard time understanding how that has anything to do with the ADA injunctive issue, which I look at as something entirely separate. So I think what you need to do here is help us understand how can we affirm a district court summary judgment based on the statute of limitations on a ticket in a prior voyage when all we're talking about is injunctive relief in the future. Yes. You'll recall, Your Honor, that we raised 11 separate grounds for summary judgment. They were in our notice of motion. They were brief. They were supported by uncontradicted evidence on the record, 11 separate grounds. And the court below reached only the first, the ticket. The court didn't reach the other 10. Because there was no response. Because there was no response and no evidence offered by the plaintiff in response to any of the other 10.  So the question is, was it a summary judgment motion? It was a summary judgment motion. Was it a summary judgment motion on all of the claims? Yes, sir. It was a summary judgment motion on 11 separate grounds. And so I understand that the other side didn't respond with any evidence. And that's the whole point. And that's what the judge told them. You didn't come up with anything. Sorry, you lose automatically. Exactly. And here's the point I'm trying to make. If we're talking about the ultimate remedy that is sought here, an injunction, the plaintiff in response to those 11 grounds for summary judgment should have, I would think at a minimum, have offered evidence that she inquired which ships go to Alaska and which ship 15 of the 17 ships had these elevators down to the embarkation. That's what I was referring to earlier, by the way. Yes, sir. Okay. Fifteen of the 17 ships had it. And now, by the way, all 17 have them. But no inquiry as to how the ships are configured. No inquiry whether or not ADA-accessible balcony cabins, because that's what she wanted, were available on any particular cruise. No inquiry or, excuse me, no evidence regarding any inquiry regarding the best time to travel to Alaska in order to maximize the chances of getting assurance, given the physical configurations ashore and the necessity of ship-to-ship transfers. And I might add on the ship-to-ship transfers and the ADA proposed guidelines, ship-to-ship transfers have been eliminated from the ADA AG proposals. Why? Because there's too many variables on ship-to-ship transfers that mandate the captain's discretion. Take away the captain's discretion under those circumstances, you have chaos. Well, counsel, get back to the summary judgment here, if you don't mind. Yes, sir. I have some misgivings about the grounds upon which Magistrate Zimmerman entered the judgment here. On the other hand, the result may still have been correct. What are the strongest of the 11 arguments that you raised, or 11 proposed grounds, which, given that this is an ADA prospective relief injunctive case, which is the strongest ground that you would like us to look at in terms of reliance? Well, I think there are several, but let me be quick and brief. Under Specter, we're talking about internal affairs. If you look at the configuration of the cabins, the ADA-accessible cabins, those are the subject of consideration by administrative authorities. And incidentally, those are also the subject of consideration by the British authorities. You have to understand, these Princess ships are registered in either Gibraltar or Bermuda, and they're subject to U.K. law. They're classed with two classification societies, Lloyd's and Rina, which is the academy classification. I have these 11 grounds right here in front of me. I got your notice of motion that you filed in the district court. And Judge O'Scanlan just asked you a very specific question. Which of these grounds do you assert, you know, is your best ground, alternative basis on which to uphold the district court's summary judgment ruling? My best ground is Specter. I have it right here. There's one. You've got to mark. You're right. One, three, 11. So which one? Specter and also what number is that? You keep saying Specter. But where is it? I don't see Specter in the 11 grounds. All right. That the configuration of the vessel is a matter of the vessel's internal affairs. Okay. Which one is that? Which ground is that here? I don't have the notice of motion in front of me, Your Honor. I beg your pardon. Well, do you think we ought to have a ruling from the district court? We're a court of review. I think you should review it. So we should affirm on if ground is supported by the record. We should pick out the ground. Yes. We think best would allow us to affirm the district courts. Yes. Well, I don't know. And then I think that there's a very, very skim, skinny showing on the part of the plaintiff. Is that enough to rely on? Yes, it is, Your Honor, because the plaintiff was given notice and an opportunity to be heard on each of those 11 grounds and offered no evidence on it. Well, they offered whatever this Danz declaration amounted to. Danz, D-A-N-Z? Yes. Yeah, which uses the land-based ADA hotel guidelines and tries to apply them to cruise ships. So if you were trying to put together a case under Specter and Spitzer and the rest of these things, what do you think you'd have to allege to have a case? Well, I think that he has to allege, and he has the burden of proof on this, to show that the modifications that he's proposing are readily achievable and that he should have produced evidence on the four factors that define readily achievable. And furthermore, he would have to produce evidence that there's no solace problems or international law problems with respect to the classification societies and flags of the vessels and the international law comedy issues. They would have to negate those, because that, I think, Specter makes it very clear for us that it is the plaintiff's burden to demonstrate that the or at least to produce a prima facie case that these modifications are readily achievable. Don't you have to also show to get around the Pickering problem that the barriers are still there and it would have been a futile gesture to try to end it? That the barriers are still there, in fact. Yeah, which they're not. Okay. Is the ticket anywhere in the excerpt of the record? Yes, sir, it is. Where? It's in Volume IV. I'm not sure it has anything to do with this case, but. It's there, Your Honor, in Volume IV of the excerpts of the record, sir. Anything further, counsel? No. Thank you. Mr. Phimis, you have some reserved time. Why don't you meet the other issues or address the other issues that you raised in summary judgment? That's my first issue, Your Honor. A reply was filed. It's at Issues 4. What was this showing? What was the evidence? It was the Dan's declaration. That was, yes, Your Honor, but may I be clear that the defendants didn't seek a finding that the rooms as configured met any type of standard or would violate any of the international standards, including SOLAS, the British flag. But that's your issue. The burden is on you to establish the ADA qualification, is it not? If they had presented this motion as attacking an essential element of my case, they sought a ruling on law that specter precluded through the internal affairs rule and the clear statement rule any relief under the ADA. Yeah, they raised legal arguments. They raised purely legal arguments. We responded to them. The Dan's declaration, if I may just make one point, talked about the other alternatives to getting a shore, which is tenders that are level, local operator tenders. There's a variety of things that can be done without difficulty or expense. Going back to my first point, how do you satisfy the Pickern standard? It seemed that in Pickern the plaintiff was relieved of having to show that the plaintiff had tried to enter the place because the barriers were still there, so it would have been a futile gesture.  I think we have, Your Honor. We sent the expert and he identified that they had too few rooms and that they had a continuing problem of not allowing the disabled to go ashore. And was that presented on summary judgment? Yes, it was, Your Honor. How? We sent him there. His declaration sets forth that there are alternatives. We also have the declaration of Edwards when they expanded the issues that says that they continue to have this policy posted that the captain can exclude you. All's we're asking is that they define the captain. You know, I mean, this is seems to me very, very shaky ground. I mean, you've got a captain of a ship at sea. You've got dangerous situations. Are you asking for a declaration that the ADA trumps the captain's view that it's too dangerous to do something? I'm seeking a rule that it can't, that the captain's rule cannot be. The captain has to be, I got a piece of paper. I'm sorry, it's dangerous. You've got to take me anyway. That's what you're asking? Your Honor, in this day and age, we've got to. Is that what you're asking? Yes, Your Honor. In this day and age. Wow, that's pretty extreme. In this day and age, we need to let the disabled go to shore. This is how we include. So how do you protect the people who are supposed to take the disabled person to shore if the captain's conclusion is it's a dangerous situation? First of all, the captain has to assess the conditions, and he didn't do so here. We had perfectly clashed. Now you're talking about the past. Now you're talking about the past. Forget the past. Also, through the removal of barriers, a lift, a level tender, and assistance. Okay. You see, this is why I asked you the question at the first go-around, what's this case all about? You want the plaintiff to be able to go on the ship with a judgment from a court that tells the captain, your view of danger is irrelevant. I tell you what I want. You have to do it. That's what you're asking for. It is, Your Honor. Okay. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: O'scannlain, Trott, Paez